UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELE SUSINO, *individually and on behalf of others similarly situated*,

                Plaintiff,

v.

LACY KATZEN LLP,

                Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06249 EAW

## INTRODUCTION

Plaintiff Michele Susino ("Plaintiff") brings this putative class action against defendant Lacy Katzen LLP ("Defendant") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). Presently before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 8). For the reasons set forth below, Defendant's motion to dismiss is granted in its entirety.

## BACKGROUND

**I.  Factual Background**

The following facts are taken from Plaintiff's amended complaint (Dkt. 7), including the document attached thereto as Exhibit 1. As is required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

Plaintiff is a consumer as defined by 15 U.S.C. § 1692(a)(3) who owes an alleged debt as defined by 15 U.S.C. § 1692(a)(5). (Dkt. 7 at ¶¶ 7, 14-17). The alleged debt was, at a time unknown to Plaintiff, assigned or otherwise transferred to Defendant, which is a debt collector as defined by 15 U.S.C. § 1692(a)(6). (Dkt. 7 at ¶¶ 13, 18).

In an effort to collect the alleged debt, Defendant sent Plaintiff a letter dated October 17, 2019. (*Id*. at ¶ 20 and Ex. 1). The Court hereinafter refers to Defendant's letter of October 17, 2019, as the "Letter." The Letter was the initial written communication Plaintiff received from Defendant regarding the alleged debt. (*Id*. at ¶ 23). As discussed more fully below, Plaintiff contends that the Letter violated certain requirements of the FDCPA.

## II. Procedural Background

Plaintiff commenced the instant action on April 17, 2020. (Dkt. 1). On June 18, 2020, Defendant filed a motion to dismiss Plaintiff's complaint. (Dkt. 5). Plaintiff then filed the amended complaint on July 9, 2020 (Dkt. 7), and the Court accordingly denied Defendant's motion to dismiss the original complaint as moot (Dkt. 10). Defendant filed the instant motion to dismiss the amended complaint on July 30, 2020. (Dkt. 9). Plaintiff filed her response on August 24, 2020 (Dkt. 13), and Defendant filed its reply on August 31, 2020 (Dkt. 14).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.  General FDCPA Principles

"The Second Circuit has established two principles to assist courts in applying the [FDCPA]. First, 'because the FDCPA is primarily a consumer protection statute,' its terms must be construed liberally to achieve its congressional purpose." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). "Congress

enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quoting 15 U.S.C. § 1692(e)).

"The second principle is that, in considering whether a collection notice violates Section 1692e, [courts in this Circuit] apply the 'least sophisticated consumer' standard." *Avila*, 817 F.3d at 75; *see Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993))); *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (stating that the "least-sophisticated-consumer standard" is used to "effectuate" the FDCPA's purpose of "protect[ing] consumers from deceptive or harassing actions taken by debt collectors").

"This hypothetical consumer is a 'naïve' and 'credulous' person," *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 WL 451637, at *2 (E.D.N.Y. Jan. 17, 2018) (quoting *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015)), who is absent "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). "However, she is 'neither irrational nor a dolt.'" *Ceban*, 2018 WL 451637, at *2 (quoting *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010)). As the Seventh Circuit has aptly explained, "[t]he

'unsophisticated consumer' isn't a dimwit.  She may be uninformed, naive, [and] trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences."  *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quotations and citations omitted); *accord Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) ("We have observed . . . that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness, and that some courts have held that even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (quotations and citations omitted)).

It is not entirely settled "whether breach of the least sophisticated consumer standard is a question of law or fact[.]"  *Paul v. Enhanced Recovery Co., LLC*, No. 19-CV-4664 JMA AYS, 2020 WL 6746792, at *4 (E.D.N.Y. Nov. 17, 2020) (citation omitted).  However, "the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss."  *Id.* (citation omitted); *see also Schik v. Miramed Revenue Grp., LLC,* No. 18-CV-7897 (NSR), 2020 WL 5659553, at *4 (S.D.N.Y. Sept. 23, 2020) ("Because the standard depends on a hypothetical 'least sophisticated consumer,' a letter's compliance with the FDCPA is often determined as a matter of law on a motion to dismiss."); *Nicholson v. Forster & Garbus LLP*, No. 11 Civ. 524 (SJF) (WDW), 2013 WL 2237554, at *3 n.6 (E.D.N.Y. May 17, 2013) ("Whether a communication by a debt collector is misleading to the least sophisticated consumer is an objective question that may be determined by the Court as a matter of law."), *aff'd*, 570 F. App'x 40 (2d Cir. 2014).

The Court agrees with the consensus view in this Circuit that it may consider as a matter of law whether the Letter would have misled the least sophisticated consumer, and notes that the parties have not argued to the contrary.

### III. Plaintiff's Claims

In her amended complaint, Plaintiff asserts four separate claims of FDCPA violations by Defendant. The Court considers each claim below

#### A. First Count

Plaintiff's first claim asserts that the Letter violates 15 U.S.C. §§1692g and 1692e. (Dkt. 7 at ¶¶ 28-49). "Section 1692g of the [FDCPA] states that when an independent debt collector solicits payment it must provide the consumer with a detailed validation notice. The notice must include the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Russell*, 74 F.3d at 34. Section 1692e "further prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* (quotation omitted).

As is relevant to this case, § 1692g(a) requires a debt collector specifically to include the following in the validation notice: "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector"; "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy

of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector"; and "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g(a)(3)-(5). The Letter conveys this information essentially verbatim, stating in relevant part:

> Unless the consumer, within thirty days after the receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. If the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer (if a judgment exists) and a copy of such verification or judgment will be mailed to the consumer by the debt collector. Upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(Dkt. 7-1 at 2).

Plaintiff alleges that, notwithstanding the fact that the validation notice sent by Defendant reproduces the statutory language, it is "deceptive" because it "is written in third-person tense" and thus "does not advise the recipient that it has anything to do with her." (Dkt. 7 at ¶¶ 40-42). In other words, Plaintiff's contention is that a verbatim recitation of the statutorily required information is "deceptive," and that Defendant was required to replace the phrase "the consumer" with "you" in order to convey the required information accurately and clearly. *See generally Jacobson*, 516 F.3d at 90 (noting that a debt collector "has the obligation, not just to convey the information [required to be in the validation notice], but to convey it clearly").

This precise theory of deception does not appear to have previously been considered by any court. (*Cf.* Dkt. 13 at 9 ("[T]his would appear to be a case of first impression to the extent that Defendant points to no law directly on point, and Plaintiff has similarly found none.")). However, federal courts have concluded for decades that "a debt validation notice which sets forth verbatim the mandatory language of section 1692g(a)[] cannot be considered false, deceptive or misleading in violation of section 1692e." *Jang v. A.M. Miller & Assocs., Inc.*, No. 95 C 4919, 1996 WL 435096, at *5 (N.D. Ill. July 31, 1996) (collecting cases), *aff'd*, 122 F.3d 480 (7th Cir. 1997); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 594 (3d Cir. 2020) ("A collection notice can never mislead the least sophisticated debtor by relying on the language Congress chose."); *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("Collection notices that include the statute's verbatim language have been held not to be confusing. . . . Consumers can comprehend the statute's plain language.")[1]; *Kinkaid v. Allied Interstate, LLC*, No. 8:11-CV-2288-T-33MAP, 2012 WL 1574232, at *3 (M.D. Fla. May 3, 2012) ("[C]ourts have held that debt collectors should not be penalized for stating the mandatory language of § 1692g verbatim."); *Long v. McMullen, Drury & Pinder, P.A.*, No. CIV.A. RDB-10-2776, 2011 WL 4458849, at *4 (D. Md. Sept. 23, 2011) ("[The debt validation notice] reproduced verbatim the precise language used in the statute. . . . Accordingly, there is simply no evidence that the Defendant engaged in any false, deceptive, or misleading representation

---

[1] The Second Circuit cited the *Camacho* case with approval in *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282 (2d Cir. 2013). *See id.* at 286 (finding *Camacho* "persuasive").

or means in connection with the collection of any debt." (quotation omitted)); *Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330, 1332 (D.N.M. 2000) ("[A] debt validation notice which sets forth verbatim the mandatory language of section 1692g(a)(4) cannot be considered false, deceptive or misleading in violation of section 1692e." (citation omitted)). The reasoning behind these consistent holdings is clear and irrefutable—it would be an absurd result to conclude that the precise language chosen by Congress to inform a consumer of his or her rights is deceptive or misleading.

Moreover, the "least sophisticated consumer" standard "protects consumers against deceptive debt collection practices while also protecting debt collectors from liability for 'bizarre or idiosyncratic' interpretations of debt collection letters." *Paul,* 2020 WL 6746792, at *4 (citation omitted). It would be bizarre indeed to read the references to "the consumer" in the Letter as referring to anyone but Plaintiff, the addressee and holder of the alleged debt. As noted above, the least sophisticated consumer may be naïve, but she is not irrational, nor is she a dimwit. The least sophisticated consumer would understand that the portions of the Letter setting forth the rights of "the consumer" were referring to rights that she possessed.

In her response papers, Plaintiff suggests that the validation notice is also unclear because there "is no language on the first page of the Letter directing the recipient to the second page of the Letter for a notice of her rights." (Dkt. 13 at 20). However, the least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quotations and citation

omitted). Accordingly, courts in this Circuit have rejected the argument that "a debt collection letter must otherwise direct the consumer's attention to the required validation notice," because "such a requirement would itself contradict the notion that the least sophisticated consumer is still rational and expected to read the entirety of a collection letter." *Nunez v. Mercantile Adjustment Bureau, LLC*, No. 19-CV-02962 PKCST, 2020 WL 2475619, at *8 (E.D.N.Y. May 13, 2020) (quotation and citation omitted); *see also Allen v. Advanced Call Ctr. Techs., L.L.C.*, No. 18-CV-2873 RRM AYS, 2019 WL 4887683, at *7 (E.D.N.Y. Sept. 30, 2019) ("The absence of language explicitly directing the reader to the validation notice does not render a letter deficient as a matter of law."). Here, the Letter consists of only two pages. No consumer, even the least sophisticated, needs to be explicitly told to read the second page of a two-page communication.

Accordingly, Plaintiff's first claim fails to plausibly allege a violation of the FDCPA and Defendant is entitled to dismissal thereof.

## B. Second Count

Plaintiff's second claim again asserts a violation of § 1692g and § 1692e, this time related to the following statement on page two of the Letter, following the validation notice: "Any writing which disputes the validity of the debt or any portion thereof, or any writing requesting the name and address of the original creditor may be sent to the mailing address identified above." (Dkt. 1 at ¶¶ 50-74). Plaintiff contends that this statement would leave the least sophisticated consumer confused as to the address to which written disputes were to be sent, because: (1) the mailing address does not appear directly above the quoted sentence; and (2) there is no address on page two of the Letter. (*Id.* at ¶¶ 61-62).

Accordingly, Plaintiff claims that this language overshadows the validation notice. *See Jacobson*, 516 F.3d at 90 (explaining that "a debt collector violates § 1692g(a), even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor," and that "[a] notice overshadows or contradicts the validation notice if it would make the least sophisticated consumer uncertain as to her rights" (quotation omitted)).

Plaintiff's second claim also fails as a matter of law. The letterhead of the Letter plainly identifies the mailing address, stating: "<u>Mailing Address</u>: P.O. Box 22878, Rochester, New York 14692-2878." (Dkt. 17-1 at 2 (emphasis in original)). The least sophisticated consumer would understand the phrase "the mailing address above" on page two of the Letter to refer to the clearly identified mailing address set forth on page one.

In opposition to the motion to dismiss, Plaintiff contends that the instruction to send written disputes to the mailing address is confusing because there are two addresses found in the letterhead—the mailing address, which is a P.O. box, and the main office address, which is a street address. (*See* Dkt. 13 at 20-23). As an initial matter, the Court notes that Plaintiff did not identify the inclusion of the main office address as a theory of liability in the amended complaint. In any event, "[c]ourts in this Circuit regularly find that the inclusion in a collection letter of two addresses for the same debt collector—one a street address and the other a P.O. box—would not confuse the least sophisticated consumer." *Nunez*, 2020 WL 2475619, at *8. The Letter in this case unambiguously states that written disputes should be sent to "the mailing address above," and the mailing address is in turn unambiguously labeled as such, with emphasis. The only reasonable reading of the Letter

would inform the least sophisticated consumer that she needed to mail her dispute to the P.O. box.

The cases relied upon by Plaintiff—namely, *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2020 WL 4474624 (S.D.N.Y. Aug. 3, 2020), *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19-CV-5814 ARR RML, 2020 WL 1166449 (E.D.N.Y. Mar. 11, 2020), and *Pinyuk v. CBE Grp., Inc.*, No. 17-CV-5753, 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019—are inapposite. As explained in *Adler*, these three cases all concerned situations in which the debt collection letter included a detachable payment coupon with multiple, unmarked addresses. 2020 WL 4474624, at *4-5. Here, there was no detachable payment coupon, and the mailing address was clearly and unambiguously labeled "Mailing Address."

Plaintiff further cites *Carbone v. Caliber Home Loans, Inc.*, No. 15-CV-4919(JS)(ARL), 2016 WL 8711197 (E.D.N.Y. Sept. 30, 2016), but *Carbone* is also not on point. There, the debt collection letter instructed the consumer to send written disputes to "the above referenced address," but the address to which such disputes were to be sent actually appeared after this instruction, while the only address that appeared above it was a P.O. box designated for return service only. *Id*. at *4. In other words, the issue in *Carbone* was not the inclusion of two addresses, but the placement of those addresses relative to the statement "above referenced address." In this case, the unambiguously labeled mailing address is found at the top of the Letter, and the least sophisticated consumer could only understand "the mailing address above" to refer thereto.

The Court is further unpersuaded by Plaintiff's argument that the Letter's generic statement that Plaintiff should "direct any future communication regarding the above account to our office" renders the Letter confusing as to the appropriate address to send written disputes. As Plaintiff notes, the FDCPA defines "communication" as "the conveying of information through any medium." 15 U.S.C. § 6292a(2). A "communication" would thus include a telephone call or an office visit, and it was neither confusing nor deceptive for Defendant to provide its physical address and telephone number, to accommodate consumers who might wish to communicate in such a manner. Nor does the provision of such information overshadow the unambiguous designation of the P.O. box as the mailing address to which written disputes should be directed. *See Saraci v. Convergent Outsourcing, Inc.,* No. 18-CV-6505 (BMC), 2019 WL 1062098, at *2-3 (E.D.N.Y. Mar. 6, 2019) (finding that least sophisticated consumer would not be confused by debt collection letter's reference to "this office" where the correct mailing address was clearly identified).

For all these reasons, the Court finds, as a matter of law, that the least sophisticated consumer would not be confused about their rights by the instruction to send written disputes to "the mailing address identified above," and that this instruction does not overshadow the validation notice. Accordingly, dismissal of Plaintiff's second claim is warranted.

### C. Third Count

Plaintiff's third claim also alleges a violation of §§ 1692g and 1692e based on an overshadowing theory—this time, on the basis that the Letter is "on the letterhead of 'Lacy

Katzen, LLP Attorneys at Law'" but "contains no statement pertaining to Plaintiff's rights following its indication that Plaintiff's account was assigned to a law firm," "fails to advise that the fact Plaintiff's account was assigned to a law firm does not override the Plaintiff's right to dispute the debt," "fails to advise that the fact Plaintiff's account was assigned to a law firm does not override the Plaintiff's right to demand validation of the debt," and "fails to advise that the fact Plaintiff's account was assigned to a law firm does not override the Plaintiff's right to request information concerning the current creditor."  (Dkt. 1 at ¶¶ 75-110).

"A debt collection letter on a law firm's letterhead does not inherently overshadow the validation notice."  *Hochhauser v. Grossman & Karaszewski*, *PLLC*, No. 19-CV-2468 ARR RML, 2020 WL 2042390, at *5 (E.D.N.Y. Apr. 28, 2020).  Instead, the Court looks to whether there are other aspects of the Letter that could lead the least sophisticated consumer "to believe she was being sued or will be sued," thereby discouraging her from exercising her validation rights.  *Id*.  The mere fact that a debt collection letter is from an attorney does not satisfy this standard—to the contrary, "[t]he claim that every collection letter from an attorney carries an implied threat of legal action has been described by courts as overbroad and frivolous."  *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 274 (D. Conn. 2007) (quotations and citations omitted).

Here, nothing about the Letter suggests that legal action is at hand.  Further, nothing in the case law nor the FDCPA itself supports Plaintiff's theory that a law firm, when acting as a debt collector, is required to expressly state that the rights set forth in the validation notice are not diminished because of the law firm's involvement.  "The validation notice

clearly describes the plaintiff's rights, and the fact that the letter is from a law firm does not overshadow the validation notice." *Solovyova v. Grossman & Karaszewski PLLC*, No. 19-CV-2996, 2021 WL 535209, at *6 (E.D.N.Y. Feb. 12, 2021).  Defendant is entitled to dismissal of Plaintiff's third claim.

### D.     Fourth Count

Plaintiff's fourth and final claim is that Defendant violated § 1692e(3), which "prohibits a debt collector from using the false representation or implication that any individual is an attorney or that any communication is from any attorney," by falsely implying that there had been meaningful attorney involvement in the sending of the Letter. (Dkt. 1 at ¶¶ 111-26).  The Letter is drafted on law firm letterhead and is signed by an attorney.  (Dkt. 7-1 at 1-2).

"The Second Circuit has recognized that debt collection letters printed on 'law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter.  And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is, therefore, misleading within the meaning of the FDCPA." *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-CV-00458 BKS DJS, 2019 WL 4602329, at *4 (N.D.N.Y. Sept. 23, 2019) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)).  Defendant does not, nor could it, dispute this well-established case law.  Instead, Defendant contends that Plaintiff's allegation that there was no meaningful attorney involvement in drafting the Letter is conclusory and thus insufficient to render Plaintiff's fourth claim plausible.

The Court agrees with Defendant. The amended complaint alleges, on information and belief and with no further elaboration, that "no attorney employed by Defendant had any meaningful involvement in the day-to-day collection of Plaintiff's alleged debt." (Dkt. 1 at ¶ 116). "A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief." *Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 CJS, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020). Plaintiff's amended complaint sets forth no basis for her conclusory assertion of no meaningful attorney involvement and is thus not plausible. *See Barata v. Nudelman, Klemm & Golub, P.C.*, No. CIV. 2:13-4274 KM, 2015 WL 733628, at *3 (D.N.J. Feb. 19, 2015) (dismissing claim for violation of § 1692e(3) because the plaintiff did "not plead any facts tending to suggest that there is any foundation for the allegation that no attorney reviewed the letters before they were sent").

In opposition to the motion to dismiss, Plaintiff indicates that the factual basis for her allegation of no meaningful attorney involvement is the statement in the Letter that "[Defendant is] sending this letter based on account information provided by our client. . . ." (Dkt. 13 at 26). Setting aside the fact that Plaintiff failed to include these allegations in her amended complaint—her second attempt to identify an FDCPA violation in the Letter—the Court finds this to be an insufficient basis to infer a lack of attorney involvement. It is true that another district court in this Circuit has found a statement in a debt collection letter that a law firm is "relying <u>entirely</u> on information provided by" a client "suggests that the defendant sent the plaintiff [the] letter based solely on information

provided by the creditor, without any attorney review," and thus can support a claim for violation of § 1692e(3). *Hochhauser*, 2020 WL 2042390, at *6 (emphasis added); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003) (explaining that "merely being told by a client that a debt is overdue is not enough" to constitute meaningful attorney involvement). However, unlike the debt collection letter at issue in *Hochhauser*, the language in the Letter does not suggest that the only basis for the information set forth therein is the account information provided by Defendant's client. "[A]lthough . . . an attorney may not rely *entirely* on his client's assertions about circumstances of an individual debtor, . . . where an attorney has reason to believe that the client is providing reliable information, some degree of reliance is permissible." *Miller v. Wolpoff & Abramson, L.L.P.*, 471 F. Supp. 2d 243, 254 (E.D.N.Y. 2007) (emphasis in original). Indeed, it is difficult to imagine how an attorney acting as debt collector could avoid basing his assessment of the appropriate course of action at least in part on the account information provided by his client. Accepting Plaintiff's newly articulated theory as a sufficient basis for pleading lack of attorney involvement would be tantamount to finding that such a claim can be asserted whenever a law firm functions as debt collector, and there is no basis for such a conclusion in either the text of the FDCPA or the case law interpreting it.

In sum, the Letter's explanation that it is based on account information provided by Defendant's client does not render the assertion of no meaningful attorney involvement plausible, nor has Plaintiff identified any other factual allegations that could form the basis for this claim. Accordingly, dismissal of Plaintiff's fourth and final cause of action is warranted. *See Richardson v. Midland Funding, LLC*, No. CIV. CCB-13-1356, 2013 WL

6719110, at *8 (D. Md. Dec. 18, 2013) (dismissing claim for violation of § 1692(e)(3) where the plaintiff had failed to allege facts supporting the conclusion of no meaningful attorney involvement), *aff'd*, 583 F. App'x 124 (4th Cir. 2014).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 8) is granted. The Clerk of Court is directed to close this case.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　ELIZABETH A. WOLFORD
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　March 8, 2021
　　　　　Rochester, New York